IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEARLINE P.,[1] | ) |
| Claimant, | ) No. 17 C 8996 |
| v. | ) Jeffrey T. Gilbert<br>) United States Magistrate Judge |
| ANDREW SAUL,[2]<br>Commissioner of Social Security, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant Pearline P. ("Claimant") seeks review of the final decision of Respondent Andrew Saul, Commissioner of Social Security ("the Commissioner"), denying Claimant's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7].

The parties have filed cross-motions for summary judgment [ECF Nos. 22 and 29] pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, Claimant's Brief in Support of Motion for Summary Judgment [ECF No. 22] is granted, and the Commissioner's Motion [ECF No. 29] is denied. This matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] Pursuant to Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul automatically is substituted as a party in this case.

## I. PROCEDURAL HISTORY

Claimant filed applications for DIB and SSI on March 2, 2011 and March 7, 2011, respectively, alleging a disability onset date of July 15, 2010. (R. 11.) Claimant's earnings records show that Claimant acquired sufficient quarters of coverage to remain insured through March 31, 2014. (R. 787). Claimant's application for DIB and SSI initially were denied on July 15, 2011, and upon reconsideration were denied again on September 21, 2011, after which Claimant requested an administrative hearing. (*Id.*) On May 24, 2012, Claimant, represented by counsel, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Jose Anglada. (*Id.*) The ALJ also heard testimony from Vocational Expert ("VE") Cheryl Hoiseth. (*Id.*)

On June 27, 2012, the ALJ denied Claimant's applications for DIB and SSI based on a finding that she was not disabled under the Act. (R. 8-29.) The Appeals Council declined to review the matter on November 26, 2013, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by the district court under 42 U.S.C. § 405(g). (R. 1-6.)

On March 11, 2016, this Magistrate Judge, presiding by consent pursuant to 28 U.S.C. § 636(c), issued a Memorandum Opinion and Order remanding the case and finding that the ALJ had erred in assessing Claimant's Residual Functional Capacity ("RFC") by not building a logical bridge between the evidence and the ALJ's finding that Claimant could perform medium work. (R. 861-69.) *See Pope v. Colvin*, 2016 WL 1060280 (N. D. Ill March 11, 2016). Claimant's second hearing was held on August 11, 2017. (R. 786.) The ALJ then issued a second unfavorable decision on September 5, 2017, finding again that Claimant was not disabled under the Act. (R. 786-799.)

The ALJ's decision followed the five-step sequential evaluation process required by Social Security Regulations ("SSRs").[3] 20 C.F.R. § 405.1520. At step one, the ALJ found that Claimant had not engaged in any substantial gainful activity ("SGA") since the alleged onset date of July 15, 2010. (R. 789.) At step two, the ALJ found that Claimant had the severe impairment of asthma. (*Id.*) The ALJ found Claimant's affective mood disorder, hypertension, heart failure, coronary artery disease, and substance abuse in remission to be non-severe. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 404.926). (R. 790.) The ALJ then assessed Claimant's RFC and concluded:

> [T]he claimant has the residual functional capacity to perform a range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). More specifically, the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently, and can be on her feet standing/walking about 6 hours in an 8 hour workday and sit about 6 hours, with normal rest periods. She is unable to work at heights or frequently climb ladders. She should avoid concentrated exposure to fumes, dust, odors, gases or poorly ventilated areas.[4]

(R. 790.) Based on this RFC, the ALJ determined at step four that Claimant was capable of performing her past relevant work as a receptionist or collections clerk and did not proceed to step five. (R. 798.) The ALJ found that Claimant was not under a disability from July 15, 2010 through

---

[3] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). Although the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

[4] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

3

the date of his decision. (R. 799.) Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## III. ANALYSIS

On appeal, Claimant asserts the ALJ made four errors. First, Claimant asserts the ALJ violated the law of the case doctrine and failed to build a logical bridge between the evidence and his RFC findings. Second, Claimant contends the ALJ improperly rejected the medical opinions of both the consultative psychologist and the reviewing psychologist and substituted his own opinion. Claimant also argues that the ALJ's RFC was not support by substantial evidence. Third, Claimant asserts the ALJ did not properly assess the evidence of her musculoskeletal impairments and should have called a medical expert. Finally, Claimant asserts the ALJ improperly evaluated Claimant's subjective symptom statements.

### A. The ALJ Did Not Violate the Law of the Case Doctrine, but Failed to Support His Physical RFC with Substantial Evidence

Relying on the Seventh Circuit's decision in *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) in which the Seventh Circuit concluded that a previous finding of insufficient evidence "is the type of ruling that establishes the law of the case," Claimant argues that the ALJ violated the law of the case doctrine by failing to follow this Court's remand order. *See* Claimant's Brief [ECF No. 22], at 8. Claimant, however, conflates the issue in *Wilder*, and the Court disagrees that that Claimant violated the law of the case doctrine.

In *Wilder*, the Seventh Circuit found the claimant had presented the same evidence as previously admitted, that this evidence was sufficient to support a finding of disability, and that the second ALJ again found the evidence insufficient to support a finding of disability. *Id.* at 804. In this case, however, the Court previously did not find that the evidence was sufficient or insufficient to support a finding of disability. (R. 865.) Instead, the Court found that the ALJ "failed to draw a logical bridge from his discussion of the medical evidence to his ultimate findings regarding Claimant's RFC that she could perform medium work." (*Id.*) The determination in

Claimant's case fundamentally is different than the determination in *Wilder*. In *Wilder*, the Seventh Circuit found that evidence of disability conclusively was established. In this case, however, this Court found that there was no logical bridge built between the evidence and conclusion. As this Court did not rule on the sufficiency of the evidence, the law of the case doctrine does not apply in this case. *See Key v. Sullivan*, 925 F.3d 1056, 1060 (7th Cir. 1991) ("The gist of the doctrine is that once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case.")

Claimant also contends that the ALJ failed to support his RFC with substantial evidence. Specifically, Claimant argues that the ALJ failed to adequately explain how the medical evidence supports his RFC finding that Claimant could perform medium work. The Court agrees with Claimant. Again, unfortunately, the ALJ failed to draw a logical bridge from his discussion of the medical evidence to his ultimate finding that Claimant could perform medium work.

Medium work is defined as work involving lifting no more than 50 pounds with frequent lifting or carrying of objects up to 25 pounds. *See* 20 C.F.R. § 404.1567(c). Additionally, medium work also requires a person to stand or walk, off and on, for approximately 6 hours in an 8-hour workday. *See* SSR 83-10. At the second hearing, Claimant testified that the most she could lift, and carry was 8 to 15 pounds at a time. (R. 847.) This represents a decrease from the last time Claimant testified and said she was able to lift 15 to 20 pounds at one time and carry 10 pounds. (R. 866.) Claimant also testified that she could only be on her feet for 3 hours a day and needed a 45 minute to an hour break after each hour of standing. (R. 838.) Furthermore, Claimant testified that because of her symptoms from asthma, such as shortness of breath, and her chest pains that she could no longer work as a collections agent because talking on the phone was too physically demanding. (R. 814.) Claimant's testimony regarding the impact her symptoms had on her work

was supported again by observations made by the human resource manager at the collection agency who stated that Ms. Pope "left often due to medical conditions that would not allow her to stay. Because of her illness, she was taken to the hospital on a couple of occasions by the owner. Eventually her health did not allow her to continue employment with us." (R. 216.)

The Commissioner argues that, contrary to what Claimant says, the ALJ discussed her medical treatment at length and noted Claimant's reports of chest pain, asthma, and shortness of breath but ultimately found that there was no objective medical evidence in the record to support these claims. (R. 793.) A lengthy recitation of a claimant's medical history and the evidence in the record, however, is not equivalent to or a substitute for an explanation of how or why the medical evidence supports a finding that Claimant is capable of performing at a medium work level. An ALJ's failure to explain how he arrived at his conclusions in the RFC assessment is sufficient to warrant reversal of an ALJ's decision. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (citing SSR 96-8p). Here, the ALJ again failed to explain how Claimant has an RFC for medium work in light of the evidence in the record that the Claimant was diagnosed with cardiac arrhythmia, experienced shortness of breath from exertion, had trouble completing multiple stress tests, experienced syncopal episodes, and had joint pain. (R. 60, 219-29, 263-79, 317-29, 346, 473-93.)

A general discussion of the medical record does not satisfy the ALJ's obligation to explain how he arrived at his conclusion and provide the logical bridge from the evidence to his conclusion. *See Samuel v. Barnhart*, 316 F. Supp. 2d 768, 772 (E.D. Wis. 2004) ("By failing to include in his narrative discussion a description of how the medical evidence supported his findings, the ALJ committed a clear error of law."); *see also Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (remanding the case after the ALJ failed to explain how she reached her conclusions about the

plaintiff's physical capabilities in assessing her RFC). Specifically, the ALJ failed to explain how he resolved the discrepancies between Claimant's complaints of chest pain, asthma attacks, and arthritis, and the personal observations of her human resources manager, with an ability to perform at the medium work level. There are several treatment notes indicating that Claimant was on medication for asthma and shortness of breath. (R. 191, 210, 223-24, 230, 266.) In addition, there are notes showing that Claimant's asthma could be triggered by exertion and/or emotional stress. (R. 39, 191, 310, 324, 343-44, 378.) While Claimant stated at the hearing that her asthma had improved, there are still medical records showing that she continued to experience periods of shortness of breath and wheezing. (R. 820, 1096, 1140, 1143, 1151.) Finally, the ALJ did not explain why Claimant could now perform her past relevant work when, in his 2012 opinion, he decided that Claimant could not perform work as a receptionist. (R. 23.) This is troubling as Claimant's symptoms appear to have remained the same and even in some instances deteriorated since 2012.

It is clear the ALJ did not account for the above evidence when making his RFC determination. *See Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) (holding that the "ALJ improperly discredited [claimant's] complaints of disabling pain and ignored evidence that might impact [claimant's] ability to sit, walk, stand, lift, carry, or bend on a prolonged basis [when] there is some evidence to bolster this claim"). Therefore, on this record, the ALJ's conclusion that Claimant has the RFC to perform medium work is not supported by substantial evidence. Remand is required so that the ALJ can provide a better explanation as to how he reached his conclusion that Claimant could perform medium work in light of her varied and numerous conditions.

### B. The ALJ Erred In Weighing The Medical Opinion Of The Consultative Psychologist

Claimant attended a mental consultative examination with Dr. Robert Prescott in June 2011. (R. 396.) Dr. Prescott reviewed medical records, a treatment note from Rush University Medical Center, and considered Claimant's own statements. (*Id.*) Dr. Prescott found that Claimant spoke in a slower than usual rate. (R. 398.) Claimant reported to Dr. Prescott that she experienced problems with her memory. (*Id.*) He also noted the she had recurrent obtrusive thoughts, difficulty trusting people, and experienced physical abuse as a child. (*Id.*) He diagnosed her with major depression, moderate; cognitive disorder, not otherwise specified; heroin dependence in remission; and post-traumatic stress disorder, chronic. (R. 400.)

The ALJ gave Dr. Prescott's opinion partial weight. (R. 796.) The ALJ based this on Claimant's admission that she had not received mental health treatment, the fact that Dr. Prescott only spent 45 minutes with Claimant, and that his exam and report relies partially on Claimant's self-reported symptoms, which were not reflected in the objective medical record. (R. 796.) The ALJ also stated that Claimant's behavior was appropriate at an internal medicine consultative examination Claimant attended later that day. (*Id.*)

The state agency reviewing psychologist, Dr. Michele Womontree, Psy. D., examined the SSR listings for affective disorders, anxiety-related disorders, and substance addiction disorders in evaluating Claimant. (R. 553.) She found that Claimant's major depressive disorder was a medically determinable impairment that did not satisfy the diagnostic criteria of the listing. (R. 556.) She also found that Claimant's PTSD was a medically determinable impairment that did not satisfy the listing requirements. (R. 558.)

Dr. Womontree opined that Claimant had mild limitations in activities of daily living and maintaining social functioning, and she had moderate limitations in maintaining concentration,

9

persistence, or pace. (R. 563.) Dr. Womontree also found Claimant to be less credible due to a lack of mental health treatment and inconsistencies in her report. (R. 565.) Dr. Womontree also highly recommended "treatment to improve the quality and enjoyment of [Claimant's] life," and found that Claimant should be limited to simple tasks and should not be expected to directly serve the public. (R. 569.)

In February 2012, Claimant saw Yolanda Capriles, a licensed clinical professional counselor (LCPC), who diagnosed Claimant with adjustment disorder with depressed mood and assigned her a GAF score of 51.[5] (R. 1075-76.) Ms. Capriles noted that Claimant's affect was flat, but her exam was otherwise unremarkable on that date. (*Id.*)

Dr. Prescott's consultative examination is the only examining mental health record that included functional limitations. While Dr. Womontree's opinion included limitations, she never examined Claimant and is considered a reviewing mental health opinion under 20 C.F.R. § 404.1527. *See* 20 C.F.R. § 404.1527(c)(1). ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.") Here, the ALJ gave Dr. Prescott's opinion only partial weight with no logical bridge built to demonstrate why Dr. Prescott's opinion was afforded such weight. (R. 796.)

The ALJ gave greater weight to the fact that Claimant was not tearful at an internal medicine examination than to Dr. Prescott's mental status examination, which focused on Claimant's psychological well-being and did elicit a tearful reaction. (R. 404.) Further, the ALJ notes that the exam with Dr. Prescott only lasted 45 minutes (R. 796), yet he discredits Dr. Prescott's opinion with an internal medicine examination that lasted 40 minutes. (R. 404.) Even if

---

[5] "The GAF is a 100-point metric used to rate overall psychological, social, and occupational functioning, with lower scores corresponding to lower functioning." *Lanigan v. Berryhill*, 854 F.3d 558, 561 n.1 (7th Cir. 2017.)

the absolute amount of time spent a consultative examiner spends with a claimant might be a relevant consideration, the ALJ fails to explain here why a doctor's brief notes from a shorter and less thorough mental health evaluation conducted during an internal medicine consultative exam are sufficient to discredit an examining psychologist in this case. In other words, the ALJ failed to "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). *See also Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) ("If the Commissioner's decision lacks adequate discussion of the issues, it will be remanded.").

In addition, Dr. Prescott is a mental health specialist, and the internal medicine examination focused on the physical aspects of Claimant's health. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.") The internal medicine consultative examination was performed by Dr. Donald F. Pochyly, M.D. (R. 404–07.) Dr. Pochyly gave Claimant a full physical examination in which he noted Claimant suffered from asthma, chest pain, shoulder pain, and depression. (*Id.*) Dr. Pochyly also noted that Claimant's behavior was appropriate with a flat affect but not tearful. (*Id.*) The ALJ chose to accept Dr. Pochyly's opinion on Claimant's mental health over Dr. Prescott's opinion without any consideration of their differing specialties as required by the regulations. *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009) (per curiam) (the ALJ's decision was not supported by substantial evidence where "the choice to accept on physician's opinion[] but not the other's was made by the ALJ without any consideration of ... the differing specialties of the two doctors[.]"). In discounting the medical opinion of Dr. Prescott, the ALJ failed to support his decision with substantial evidence, requiring remand. *Id.* [6]

---

[6] In fact, the internal medicine consultative examiner, Dr. Donald F. Pochyly, implicitly acknowledged the limitations of his brief mental status examination conducted during his overall internal medicine

The ALJ also focused on the fact that Dr. Prescott's opinion was based on Claimant's self-report of symptoms. The Commissioner defends this stance, stating that the ALJ may discount medical opinions that are based solely on a claimant's subjective complaints. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). While this is true when it comes to physical complaints, the Seventh Circuit has held that "psychiatric assessments normally are based primarily on what the patient tells the psychiatrist, so that if the [ALJ] were correct, most psychiatric evidence would be totally excluded from social security disability proceedings[.]" *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). Moreover, even though Dr. Prescott's opinion relies in part on Claimant's subjective report, "it is filtered through the psychologist's training and judgment." *Thompson v. Berryhill*, 722 Fed. Appx. 573, 581 (7th Cir. 2018). A claimant's subjective complaints are "assessed according to the profession's objective criteria; what the psychologist puts out is not a simple transcription of the patient's self-report." *Id.* Mental health professionals must rely on a patient's self-reporting, along with observation.

Mental health professionals also rely on testing for judgment, attention, and other areas. Dr. Prescott employed such testing with Claimant. (R. 399); *Lucas v. Astrue*, 2013 U.S. Dist. LEXIS 106584, at *19 (N.D. Il. July 30, 2013) ("If [testing] is still inadequate, then nearly every file in every Social Security disability case involving psychological examinations is inadequate.") Dr. Prescott did not base his opinion solely on Claimant's report of symptoms; he also employed a variety of tests to analyze Claimant's orientation, memory, cognitive level, abstract thinking, and judgment and insight. (R. 398-99.) These tests included basic questions, number recall, a five-word recall, math and geography questions, meaning of abstract phrases, and asking Claimant what she would do in a variety of scenarios. (*Id.*) Dr. Prescott noted that Claimant could recall four

---

consultation by stating after his roughly two-line mental status assessment, "Please refer to psychiatric evaluation for further information in this regard." (R. 406).

numbers forward and three numbers reversed. (*Id.*) Claimant could remember all five words immediately, but she could only remember three words after five minutes. (*Id.*) Claimant could only name two large cities (when asked to name five), and she could do simple addition, but struggled with multiplication, subtraction, and division. (*Id.*) Dr. Prescott noted that Claimant performed "less well than expected." (R. 400.)

In sum, it was proper for Dr. Prescott to rely in part on Claimant's reported symptoms along with the psychiatric testing he employed. *Lucas,* 2013 U.S. Dist. LEXIS 106584, at *19. Mental health opinions are not automatically suspect because they are in part based on subjective reports. *Thompson,* 722 F.3d Appx. at 581. Rejecting a mental health opinion because it is based in part on subjective symptom statements is remandable error. *See Adaire v. Colvin,* 778 F.3d 685, 688 (7th Cir. 2015) (finding that giving subjective statements no weight is a fundamental error). Therefore, the Court remands on this issue so the ALJ can reassess the weight to be given to Dr. Prescott's opinion.

### C. The ALJ's RFC Is Not Supported By Substantial Evidence

Claimant next argues that the ALJ's decision regarding her RFC is not supported by substantial evidence because he failed to properly account for her mental limitations. The ALJ stated that he gave greater weight to state agency psychiatrist Dr. Womontree's narrative section of her opinion than he did to her conclusions and limitations sections. (R. 789.) The ALJ then found that Claimant had no severe mental impairments. (*Id.*) Dr. Womontree reported that Claimant did suffer from major depressive disorder, and she maintained in her narrative that Claimant would need to be limited to simple tasks and would not be able to directly serve the public. (R. 569.) Although the ALJ gave greater weight to this narrative, he failed to adopt those limitations into his RFC. (R. 789.)

13

The Commissioner is correct that the ALJ is not required to adopt a doctor's opinion and is not required to rely on a competing opinion. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). However, the ALJ also must support his RFC findings with substantial evidence. *Id.* The ALJ claims to give Dr. Womontree's narrative greater weight than her conclusions and limitations, yet he does not adopt any of Dr. Womontree's narrative into his step two or RFC analysis. He cites to Dr. Womontree's statement that "most limitations she reports are related to medical allegations," in stating that Claimant's only functional limitations were physical limitations. (R. 789.) The ALJ ignores Dr. Womontree's next sentence and following paragraph, where she states that Claimant also suffers from major depressive disorder, for which treatment is highly recommended. (R. 569.) She then lays out functional limitations for Claimant's depression, stating that she would need to be limited to simple tasks and would not be able to directly serve the public. *Id.* Claimant argues that these limitations should have been addressed in the RFC since the ALJ gave Dr. Womontree's narration great weight. The Court agrees.

The ALJ's focus on Dr. Womontree's statement that most of Claimants complaints were of a physical nature is exacerbated by the fact that he relies on Claimant's physical improvement in finding her not disabled. (R. 790, 793, 795.) The ALJ seems to think that Claimant's improvement with respect to her physical ailments means her mental health also has improved. This is not substantiated by the record, nor does it accurately reflect what Dr. Womontree opined in her narrative. (R. 569.) Dr. Womontree simply noted that the majority of Claimant's complaints and limitations stemmed from physical allegations, but that Claimant also suffered from major depressive disorder which required treatment and functional limitations. (*Id.*) The ALJ must explain why he did not accept the psychologist opinion in the record, and he failed to do so here.

The ALJ failed to build a logical bridge from the evidence to his decision. This error requires remand. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

### D. Other Issues

Claimant raises two other arguments in her brief: (1) the ALJ erred by not properly assessing Claimant's musculoskeletal impairments and should have called medical expert; and (2) the ALJ used the incorrect standard to evaluate Claimant's subjective complaints and her limited activities of daily living.

The Court is not persuaded by Claimant's argument that the ALJ should have called a medical expert to evaluate her musculoskeletal limitations. The Court, however, does not want to foreclose the possibility that the ALJ on remand may decide to take a difference approach and seek an opinion from a medical expert, but the Court express no opinion on that issue other than to say that the ALJ must provide the necessary logical bridge between the medical evidence and his conclusions about the level of work Claimant is capable of performing based on her limitations that are supported by the record.

The Court also is not convinced, as Claimant argues, that the ALJ applied the incorrect standard when assessing Claimant's subjective complaints. When evaluating a claimant's subjective symptoms and complaints, the regulations require that an ALJ must determine whether a claimant's subjective allegations "can reasonably be accepted as consistent with the objective medical evidence and other evidence" 20 C.F.R. § 416.929(a).

Claimant argues that the ALJ used the incorrect legal standard to evaluate her subjective complaints because the ALJ used the boilerplate language in his opinion that Claimant's and her daughter's "statements concerning the intensity, persistence and limiting effects of [Claimant's] symptoms are not entirely consistent with the medical evidence and other evidence." (R.792.)

Claimant, however, does not include or address the following sentence in the ALJ's opinion, which states: "Accordingly, these statements have been found to affect the claimant's ability to work only to the extend they can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R.792).

Claimant argues that the ALJ's use of the boilerplate language is clear evidence that the ALJ used the incorrect standard to evaluate Claimant's symptoms. The Court is not convinced given the additional language and explanation provided by the ALJ. However, because this case is being remanded for the errors identified above, the Court does not have to resolve this internal inconsistency. On remand, the ALJ should be clear about the standard he is using to evaluate Claimant's subjective symptoms and complaints and also should provide a sufficient explanation about how his assessment of Claimant's activities of daily living inform his ultimate decision as to what level of work, if any, Claimant is capable of performing. Again, this Court does not express any opinion about the decision to be made on remand but encourages the ALJ to do what is necessary to build a logical bridge between the objective medical evidence in the record, his evaluation of that evidence, and his ultimate conclusion, whatever that conclusion may be

## IV. CONCLUSION

For the reasons stated above, Claimant's Motion [ECF No. 22] is granted, and Commissioner's Motion [ECF No. 29] is denied. The matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 22, 2020